ANGUS H. McDONALD v. R. D. DICKSON and others.

*Execution—Judgment—Action—Limitations—Pleading—
Homestead.*

1. A party may have execution on his judgment, and at the same time prosecute an action on it under leave of the court.

2. A judgment rendered in 1870, though upon a debt contracted before 1868, is subject to the provisions of the code of civil procedure as to the time of commencing action, whenever such judgment becomes itself a *causa litis.*

3. The statute of limitations is a proper plea and a complete bar to a motion for leave to issue execution on a judgment, when such motion is made more than ten years after the rendition of such judgment.

4. The provisions in the act of 1869–'70, (Bat. Rev., ch. 55, § 26,) suspending the statute of limitations until the falling in of the reversionary estate in the land embraced by the homestead, was only intended to apply where the homestead had been actually allotted, and only as to debts affected by such allotment, *i. e.,* to judgments docketed in the county where the homestead land is situate, and solely with reference to their liens upon the reversionary interest in such lands.

(*Carter* v. *Coleman,* 12 Ired., 274 ; *Binford* v. *Alston,* 4 Dev., 351 ; *Lyon* v. *Russ,* 84 N. C., 588, cited and approved.)

MOTION for leave to issue execution heard at Spring Term, 1881, of RICHMOND Superior Court, before *Gudger, J.*

The clerk before whom the motion was made refused the same and the plaintiff appealed to the superior court, where the judgment of the clerk was affirmed, and the plaintiff appealed to this court.

*Messrs. Burwell & Walker,* for plaintiff.
*Messrs. John D. Shaw* and *W. A. Guthrie,* for defendant.

RUFFIN, J. This was a motion for leave to issue execution under section 256 of the code.

The judgment was obtained and docketed on the 31st of October, 1870.   On the 9th May, 1871, a partial payment

was made thereon, and on the same day the judgment was assigned by the plaintiffs of record to the present plaintiff. Execution issued in 1875, but was returned unsatisfied. Two of the defendants in the judgment have been insolvent from the time it was rendered, and are so still. The defendant, Dickson, was so until recently when he came into possession of both real and personal property.

Notice of the motion was given 30th April, 1881, and during its pendency the plaintiff has brought an independent action on his judgment. The defendant pleads the statute of limitations, and the pendency of the new action as a waiver of the right to have execution under the judgment.

First, as to this last ground of defence : A party may have execution on his judgment, and at the same time prosecute an action on it under the leave of the court. It is so said in Freeman on judgments, § 440, and was so decided by this court, under the old system in the case of *Carter* v. *Colman*, 12 Ired. 274, and there is no change in this particular worked by the Code, which simply substitutes the discretion of the court, for the will of the plaintiff in determining when a new action on a judgment may be brought. It is easy to see that very many times it may be absolutely essential to the rights of a judgment creditor, that he should be allowed the contemporaneous use of both remedies ; and this more frequently perhaps under the new than under the old system, and the defendant can never be needlessly oppressed as he may always relieve himself if he will by paying the debt.

. Two other preliminary questions may as well be disposed of at once, viz : whether the defence of the statute of limitations can be set up at all in a proceeding like this? and if so, then which statute governs the case, the Code of Civil Procedure, or the Revised Code ?

We think there can be little doubt as to either point. Rendered as the plaintiff's judgment was in 1870, (though

upon a debt contracted before 1868), it must be subject to the provisions of the Code whenever it becomes itself a *causa litis.*

This proceeding by motion for leave to issue execution after a lapse of three years is in lieu of and a substitute for the ancient writ of *scire facias,* and it must be treated as such, and the same protection extended to parties thereunder as was done under the use of that writ. And while a *scire facias* for the purpose of reviving a dormant judgment was in the main regarded as a continuation of the old action merely, it was for some purposes a *new action. Binford* v. *Alston,* 4 Dev. 351. Its very object was to warn the defendant and furnish him the opportunity to plead any thing that could avail as a bar to the execution. In doing this, he was, of course, restricted to such defences as had supervened the rendition of the judgment, being estopped thereby as to all matters of defence against the original cause of action existing anterior to judgment. But, with this single restriction he was permitted to make any defence legally sufficient, and to enable him to do so, or rather indeed because he could do so, the proceeding was treated as being *in the nature of a new action.* "As a proceeding to revive a judgment," says Foster in his treatise on the writ of *scire facias,* "it is a judicial writ to continue the effect of, and have execution of the former judgment, yet it is in the *nature of an action,* because the defendant may plead any thing in bar of the execution;" and express mention is made by the author of the statute of limitations as constituting one of the defences which might be set up.

This brings us to the graver question as to the effect of the limitation prescribed in the Code upon the plaintiff's judgment and his right to have execution thereunder. Very much of the difficulty which surrounds the question comes from an effort to construe the provisions of our Code by the light of decisions made by the courts of other states, with

reference to their codes or statutes on the subject, when in fact their provisions are variant, and oftentimes incompatible with ours. Compare our code for instance with that of the state of New York, and it is hardly possible to conceive of greater differences than exist between the two, with reference to this very matter of the effect of the lapse of time upon a judgment and its lien upon lands. That code, after declaring that a judgment docketed shall be a lien on the lands of the defendant for ten years, expressly provides that after that period the lien shall cease only as against incumbrances and *bona fide* purchasers. Again it provides, that after the expiration of ten years, the lands of the judgment debtor, or of any one claiming under him as heir, *may be levied* upon by virtue of an execution under the judgment and sold, and the time fixed when an action on a judgment shall be barred is *twenty years*.

We have referred to the Code of that state, because it has been said that ours was mainly taken from it, and might therefore be supposed more nearly to resemble it than any other, and yet so marked are the discrepancies as to make it plain, that we can derive but little aid from the decisions of the courts there, in regard to the point in hand, and indeed so far as we have been able to investigate, ours is the only Code which fixes the current period of ten years as that which terminates the lien of a judgment and operates as a bar to a new action upon it.

That such is the effect of our Code, we can entertain no doubt, as its language is explicit as to both matters ; a judgment docketed shall " be a lien on the real property in the county for ten years from the time of docketing the same," and an action on " a judgment or decree of any court of the United States, or of any state or territory thereof " must be commenced within ten years, or else be barred.

We can give no heed to the argument of counsel that under the maxim *noscitur a sociis* the words " any state " just

quoted from the 31st section of our Code must be taken to mean the judgment of a court of some state other than our own, for we find the same form of words used in the Codes of several of the states, and everywhere they have been construed as applicable to the courts of their own states.

But with us it could make no material difference which construction should be given to that particular section, since by another of our Code, every action for relief not specially provided for must be commenced within the same period of ten years after the cause of action shall have accrued. C. C. P., §37. And a cause of action on a judgment has been uniformly held to have accrued from the day of its rendition. Our conclusion therefore is that the plaintiff's judgment is barred by the statute, and that the defendant having the opportunity to plead, afforded by the plaintiff's motion, is at liberty to do so, and the plea is fatal to the demand for execution under it.

But the plaintiff insists, since it appears that the defendant until recently has been insolvent from the time the judgment was taken, and could not therefore have had more than the value of the homestead allowed by law, (though none was actually allotted to him,) that the case is saved from the bar of the statute by virtue of the act of 1869–'70, (Bat. Rev., ch. 55, §26,) which declares it to be unlawful to levy and sell under execution the reversionary interest in lands included in a homestead, until after the expiration of the homestead interest therein, and provides " that the statute of limitations shall not run against any debt owing by the holder of the homestead affected by this section, during the existence of his interest therein." We cannot give our assent to an interpretation of that statute, so little warranted by its words, as the one insisted on seems to be, and which would introduce into the law on the subject so much uncertainty and doubt. The language certainly contemplates an actual assignment of homestead before there shall be any stay of the

statute, and it is only as to the *lands included therein* that such a stay takes place.  If held to be otherwise, what creditor could tell whether the statute was running against his claim or not, except in the rare instance of a debtor notably rich or one notably poor ?  and on the other hand the debtors of the country who need the relief against stale claims furnished by the statute, might find themselves deprived of it after the lapse of years upon the uncertain recollection of witnesses as to the value of their possessions during the time.

We cannot suppose that such a construction would meet the intention of the legislature, but that they intended what the words import, that there must be in order to stay the statute an actual allotment of homestead, and even then the cessation of the statute is only as to debts affected by such allotment, that is to say, as to judgments docketed in the county where the homestead land is situate, and solely with reference to their liens upon the reversionary interest in such lands.

As to every debt except judgments docketed, and for every purpose except that of enforcing their liens upon the reversionary interest after the falling in of the homestead interest, the statute runs and may become a bar.

This is not in conflict with the decision made at last term in the case of *Lyon* v. *Russ,* 84 N. C., 588.  There, the cause of action accrued in 1865, the judgment obtained in 1868, and docketed on the 1st of January, 1869 ; the execution under which the sale was had issued the 3rd of July, 1879 ; the defendant had his homestead laid off in 1868.  We held the sale to be ineffectual to pass the title, because the plaintiff sold under the statutory *lien* of his judgment, and that had expired by lapse of time.  There was no stay to the statute by reason of the homestead because the plaintiff denied the defendant's right to it, and sold the land in defiance of that right, as in law he might have done provided he had

moved in time; but denying the defendant's right to have any homestead, he could not use the allotment thereof as a shield for himself against the consequences of the lapse of time.

Whether he did not have a lien on the reversionary interest, or indeed whether he may not still have, are questions we did not undertake to decide; neither was it intended in that case to determine the question as to what would have been the effect of a sale, provided the plaintiff in the judgment, having kept his judgment constantly alive, had procured an execution after the lapse of ten years from the docketing, and caused it to be levied on the land, and had sold, not by virtue of the expired lien of his judgment, but by virtue of his *levy and execution.* Such a case would have presented the question as to the effect of the statute upon the judgment, whether it operated only on the *remedy* thereon, in case it became the subject of a new action, or upon the judgment itself, and to its discharge as an existing debt. But no such question arose in the case as stated in the record, and we considered it then, as we do now, much too grave a matter to be passed upon until squarely presented by the real facts of a case.

There is no error.

No error.                                                   Affirmed.