BANK v. SWINK.

(Filed November 19, 1901.)

1. FINDINGS OF COURT—*Judgment—Judge.*

Where evidence is made a part of findings of fact by trial judge and sent up with case on appeal, the evidence will be taken as a part of the findings of the court.

2. PRINCIPAL AND SURETY—*Findings of Court—Evidence.*

From the evidence set out in the findings of fact by the trial judge, it is held that the defendants, Swink and Thomason, are sureties.

3. PRINCIPAL AND SURETY—*Judgment—Extension of Time—The Code, Sec. 440.*

In an action to revive a dormant judgment, under Sec. 440 of The Code, extension of time to the principal for payment of the judgment may be pleaded by a surety, although the suretyship was not pleaded in the original action.

4. JUDGMENT—*Dormant—Revival—The Code, Sec. 440.*

In an action to revive a dormant judgment, under The Code, Sec. 440, any defense is available which has arisen since the judgment was taken.

BANK *v.* SWINK.

ACTION by the First National Bank of Salisbury against D. A. Swink, and J. A. Thomason, administratrix of George T. Thomason, heard by Judge *Geo. H. Brown,* at May Term, 1901, of the Superior Court of ROWAN County. From a judgment for the plaintiff, the defendants appealed.

*Kerr Craige, L. H. Clement,* and *T. C. Linn,* for the plaintiff.

*Glenn, Manly & Hendren, Overman & Gregory, Swink & Swink,* for the defendants.

FURCHES, C. J. This is a motion to revive a dormant judgment, in which a jury trial was waived, and, by consent of both parties, his Honor found the facts and declared the law, as follows:

This is a motion to revive a dormant judgment rendered and docketed in 1892 in favor of the plaintiff against Eugene Johnson, D. A. Swink and Geo. T. Thomason, defendants. Josephine A. Thomason is administratrix for the latter— and the motion is for leave to issue execution thereon. The motion was heard by the Clerk, and, on appeal to the Superior Court, a jury trial was waived of record by all parties, and motion heard by G. H. Brown, Jr., Judge, on Saturday, first week of said term. The Court then entered an order granting said motion, to which defendants Swink and Thomason duly excepted and appealed.

"(The Clerk will copy and send up said order, and also a copy of the Judge's notes of evidence.)

"On Tuesday of second week, before Term had been adjourned, the Court made the findings of fact, as follows, to-wit:

"On January 23, 1899, Eugene Johnson executed his note in the sum of $1,500 to plaintiff, payable at four months, and the defendants, Swink and Thomason, endorsed by signing their names on the back of said note.

BANK *v.* SWINK.

"(The Clerk will send up exact copy of said note, and all entries and endorsements thereon.)

"Said note was made and endorsed under the following circumstances: The negotiation and arrangement to have the note discounted and to borrow the money was made by Johnson with Foust, cashier of said bank. The purpose of borrowing the money was to pay Swink & Thomason, then a tobacco firm, a debt Johnson owed them. Defendant Johnson signed the note and left it with Foust, cashier. Johnson then went to warehouse of Swink & Thomason and requested them to endorse said note. Swink & Thomason went to the bank, and each wrote his name across the back of said note, and then the note was discounted by the said bank, and proceeds placed by said bank to credit of Swink & Thomason on their deposit account, which was then overdrawn. This was done by consent of Swink & Thomason. The latter gave Johnson credit for said sum on his account on their books. No money was paid to Johnson by the said bank. All payments of interest on said note were made by Johnson, and none by Swink & Thomason. There is no evidence that the bank ever presented the note to Swink & Thomason, or either of them, or ever demanded payment of them, until commencement of action. Plaintiff brought suit on said note against defendants to February Term, 1892, at which time judgment was regularly taken against defendants, Swink & Thomason, in default of answering. At May Term, 1892, judgment was regularly entered against defendant Johnson. That Term commenced on May 9, 1892. Judgment against Johnson entered and signed May 13. At that date Johnson was generally reported to be solvent, and was solvent. Judgment was duly docketed as of first day of the term.

"(The Clerk will send up copies of both said judgments, and of the complaints in the cause.)

"On May 12, 1892, defendant Johnson and the said Cash-

17———129

ier Foust and W. C. Blackmer, attorney of record in the cause and general counsel for the bank, without the knowledge of the defendants Swink & Thomason, agreed on an extension of time of payment of the judgment, upon which no execution was to issue for twelve months, provided Johnson paid up interest every ninety days. On May 12, 1892, said defendant Johnson paid up interest thereon for ninety days in advance, to August 12, 1892, and bank accepted same without knowledge of Swink & Thomason.

"No execution was issued during said period in accordance with said agreement. Only execution ever issued was January 21, 1895, and returned *nulla bona* on February 18, 1895. Johnson is now insolvent. Defendant Johnson himself wrote the note and left it with the cashier, and went to the warehouse of Swink & Thomason and told them to go to bank and endorse note, and take proceeds and give him credit for same. Johnson then owed Swink & Thomason $1,900. Swink & Thomason first learned of the ninety days' extension and payment of interest in advance hereinbefore set out during August, 1893.

"(The Clerk will send up copies of entries of judgment docket, page 220, Docket No. 8, page 770, and entries, minute docket February Term, 1892, entries and record at that term, and record of judgment against D. A. Swink and G. T. Thomason.)

"Said judgment has never been paid or satisfied by any-one. The defendants' counsel contends that, taking the entire evidence, it clearly appears that Swink & Thomason are sureties, and have been released.

"The Court is of opinion as matter of law:

"(I) That Swink & Thomason received entire consideration for their own use and benefit, and in law occupied relation of co-principal.

"(II) That they were not released from the operation of the judgment rendered against them.

"(III) That upon the facts as found upon the evidence, the motion should be granted, and that leave to issue execution according to law is granted as to defendant Swink, and to take proper proceedings according to law against the administratrix of George T. Thomason, to enforce payment of said judgment. To this judgment, order and findings, defendants Swink and Thomason except and appeal."

The Judge does not, in distinct terms, as it seems to us he might have done, find that Swink & Thomason were the sureties of Johnson. But it does seem that he has done so by necessary implication, as he incorporates in his findings the evidence in the case. And in this evidence we find that Johnson testified as follows: "I borrowed money from Foust, as Cashier of the National Bank of Salisbury. It was I who borrowed the $1,500, and I gave the note sued on, with D. A. Swink and G. T. Thomason as sureties and endorsers." And D. A. Swink testified as follows: "Johnson owed us $1,900. He came by the warehouse and told us to go by the bank and see the cashier and get $1,500. I went and saw Foust, and he showed me note and said we were to endorse it for Johnson. I did not know of this before. I endorsed it, and a few days after, Thomason endorsed it. Our firm owed the bank some money at that time. Bank placed this money to the credit of our firm, and we gave Johnson credit for $1,500. I did not arrange to borrow this $1,500; Johnson did. We knew nothing of it."

This evidence of Johnson and Swink is uncontradicted, and is made a part of the Judge's findings and case on appeal. We must therefore take it as a part of the findings of the Court, as we must take it that it was within the knowledge of the Court that we could not review the Judge upon findings of fact, where there was a conflict of evidence.

Plaintiff alleges in its complaint, "That Eugene Johnson executed and delivered his promissory note for $1,500, borrowed money, * * * and Swink and Thomason endorsed said note."

We think it is clearly shown, and the Judge so finds, that Johnson negotiated the loan, borrowed the money, and gave his note therefor with Swink and Thomason as his sureties. But it is distinctly found by the Court that Swink and Thomason never paid interest on said note, nor was there ever any demand made upon them for the payment of interest, or for any other amount; while the defendant Johnson several times paid the interest due on said note, which, of itself, created the presumption that Johnson was the principal and that Swink and Thomason were his sureties. 1 Brandt on Suretyship, sec. 33. And it seems that this being a fact that plaintiff must have had knowledge of, it would also create a presumption of knowledge on the part of plaintiff that Johnson was principal and Swink and Thomason were sureties. *Sutton v. Walters,* 118 N. C., 495.

But Swink swore that Foust, cashier, said when "he showed me the note that we were to *endorse it for Johnson.*" It must therefore be taken that plaintiff had notice of the fact that Swink and Thomason were the sureties of Johnson. This being so, the extension of time given to Johnson would have been a discharge of Swink and Thomason, if it had been before judgment was taken against them, if it had been set up by them as a defense on the trial. *Sutton v. Walters, supra,* and cases there cited.

It remains to be seen whether Swink and Thomason can avail themselves of this defense, since judgment.

The judgment having become dormant, this proceeding was commenced under section 440 of The Code to revive the same. This could not be done without notice to the defendants, giving them a day in Court to show cause why the

judgment should not be revived and execution issued thereon. On the hearing of this motion, defendants are entitled to set up any defense or reasons why the judgment should not be revived against them, that have arisen or accrued since the judgment was taken. *Smith v. Sheldon,* 35 Mich., 42, 24 Am. Rep., 529 (opinion by Judge Cooley), 24 Am. and Eng. Enc. (1st Ed.), 748; 2 Brandt on Suretyship, secs. 742, 743; Freeman on Judgments (3d Ed.), sec. 226. And it is expressly said by this Court that in applications to revive judgments under section 440 of The Code, the defendant may avail himself of any defense to which he may be entitled, arising *since* the judgment was taken. *McLeod v. Williams,* 122 N. C., 451— citing *McDonald v. Dickson,* 85 N. C., 248, and *Lytle v. Lytle,* 94 N. C., 683, as authority for so holding.

It therefore seems that the defendants Swink and Thomason were entitled to the benefit of this defense in this proceeding.

But it is contended by the plaintiff that if all this should be so, as to principals and known sureties, it is not so in this case; and that the defendants Swink and Thomason are not entitled to this defense, for the reason that they received or got the benefit of the money paid for said note; that this made them principals to the plaintiff, whatever relations may have existed between them and Johnson. And for this position they cite what is said by the Court in the case of *Bank v. Sumner,* 119 N. C., 591, and *Hoffman v. Moore,* 82 N. C., 313.

The paragraph referred to in *Bank v. Sumner* is but a suggestion, and while we think it was correct as applied to the facts of that case, it does not seem to us to sustain the contention of the plaintiff in this case. In that case, Sumner got the full benefit of his endorsement; he paid his own debt with a note of Bostic and Cobb, and it was of no benefit to them that he should have endorsed it. In this case, the

endorsers, Swink and Thomason, got no benefit from the endorsement, but Johnson did. He paid Swink and Thomason a debt he owed them. Johnson was solvent at that time, and if he had not paid them in this way, or some other way, they would have made their debt out of him. But after he paid them by the money received on this note, and they gave him credit on his debt for that amount, they had no debt against him. They would hardly have done this, if it had been their note and their money. We therefore do not think the suggestion made in *Bank v. Sumner* applies, and the judgment of the Court is erroneous and is

Reversed.