FARRAR v. HARPER.

(Filed September 29, 1903.)

1. LIMITATIONS OF ACTIONS—*Homestead—Act 1869-'70, ch. 121—Acts 1885, ch. 359—Acts 1887, ch. 17—Acts 1901, ch. 612—Judgments.*

Acts 1885, ch. 359, does not suspend the running of the statute of limitations on a judgment until there has been an actual allotment of the homestead.

2. LIMITATIONS OF ACTIONS—*Homestead—Judgments—Acts 1901, ch. 612.*

Acts 1901, ch. 612, giving two years within which to allot a homestead and thereby preventing the running of the statute of limitations against a judgment, does not apply to judgments taken more than ten years before the passage of the said act.

ACTION by Farrar, Wright & Co. against A. E. Harper, heard by Judge *George H. Brown,* at March Term, 1903, of the Superior Court of EDGECOMBE County. From a judgment for the plaintiff the defendant appealed.

*G. M. T. Fountain,* for the plaintiff.
*James M. Norfleet,* for the defendant.

WALKER, J. This is a motion for leave to issue execution under section 440 of The Code. The plaintiffs obtained judgment against defendant in the court of a justice of the peace on December 17, 1888, for $128.52, and on the same day caused it to be docketed in the Superior Court. An execution

was issued on this judgment on the 8th of December, 1892, but it appears to have been issued without notice, as required by section 440. This fact, though, is immaterial in the view we take of the case. No other execution has ever issued on the judgment. The motion for leave to issue execution was made and the plaintiffs' affidavit filed on the 19th day of February, 1903, so that ten years had elapsed between the time the execution issued, December 8, 1892, and the date on which this motion was made. No homestead has even been allotted to the defendant. The defendant, in answer to the motion and affidavit of the plaintiffs, relied upon the statute of limitations. The Clerk of the Superior Court, at the hearing, ruled that the statute did not bar the plaintiffs' judgment, and ordered execution to issue. The defendant excepted and appealed to the Superior Court, which Court affirmed the decision of the Clerk, and the defendant again excepted and appealed to this Court.

It was properly conceded by the plaintiffs' attorney on the argument that if the law, as declared in *McDonald v. Dickson,* 85 N. C., 248, has not been changed by subsequent legislation, the statute of limitations bars the plaintiffs' right to have an execution issued, as it was decided in that case that the running of the statute was not suspended by the Act of 1869-'70, chapter 121, until there had been an actual allotment of the homestead. The language of the Act of 1869-'70, which was construed in that case, is as follows: "The statute of limitations shall not run against any debt owing by the holder of the homestead affected by this act during the existence of his interest in the homestead." The plaintiffs contend, though, that the law in that respect has been changed by subsequent enactments of the Legislature.

In *Markham v. Hicks,* 90 N. C., 204, the Court called attention to the fact that the Act of 1869-'70 had not been incorporated in The Code of 1883. At the next session of

the General Assembly—that is, in the year 1885—an act was passed which, as amended by the Act of 1887, chapter 17, to correct a verbal mistake, reads as follows: "The statute of limitations shall not run against any judgment against the owner of a homestead or homestead interest during the existence of such homestead or homestead interest, whether the same has been or shall hereafter be allotted, assigned and set apart under execution or otherwise." It will be observed that this statute, in its language, so far as it relates to the actual allotment of the homestead, is almost identical with the Act of 1869-'70 and is certainly substantially so. The Act of 1869-'70 provided that the statute of limitations should not run "during the existence of his (the debtor's) interest in the homestead," and the Act of 1885, as amended by the Act of 1887, provides that "the statute shall not run against any judgment against the owner of a homestead or homestead interest during the existence of such homestead," etc. There is manifestly not enough difference, so far, in the phraseology of the two acts to cause us to give them different interpretations. Both must mean the same thing. If the Act of 1885 stopped where we have left off in the quotation taken from it, the plaintiffs, perhaps, would not insist that the two acts are not identical in meaning, though there is some slight difference in the form of expression, but they contend that the provision in the Act of 1885 that the statute shall not run during the existence of the homestead is qualified by the words "whether the same has been or shall hereafter be allotted, assigned and set apart under execution or otherwise," and that the last quoted words were intended to change, and do change, the law as declared in *McDonald v. Dickson, supra,* and that it has not been required, since the passage of the Act of 1885, that the homestead should be actually allotted, provided the debtor's land is worth less than $1,000. We are unable to take this view of the question, but rather think that the Act of 1885,

by the very language last quoted, shows that the Legislature contemplated and intended that there should be an actual allotment before the running of the statute should cease. The language of the Act of 1885 manifests a purpose on the part of the Legislature to accept and confirm the construction of the Act of 1869-'70 by this Court in *McDonald v. Dickson, supra.* It seems to us that any other interpretation of the said acts, which would suspend the operation of the statute of limitations before the homestead has been allotted, would not only contravene the spirit and intent of the law, but would be attended, as so clearly pointed out by *Ruffin, J.,* in *McDonald v. Dickson,* with great inconvenience and uncertainty. We cannot conclude that the Legislature intended to change the wise and well-conceived policy declared in the Act of 1869-'70 as construed by this Court, and to substitute one which would render the rights and liabilities of parties to judgments so uncertain and indeterminate.

The plaintiffs next relied on the Act of 1901, chapter 612, which amends the Act of 1885, so that it now reads as follows: "The statute of limitations shall not run against any judgment against the owner of any homestead or homestead interest during the existence of such homestead or homestead interest: *Provided,* the said homestead shall be actually assigned and set apart to the judgment debtor or homesteader before the expiration of ten years from the docketing of such judgment: *Provided further,* that the owners of judgments docketed since March 11, 1885, shall have two years from the ratification of this act within which to assign and set apart the homesteads under such judgments, etc." The contention is that, under this act, they have two years after the date of its ratification within which to have the homestead allotted, and they now ask that an execution may issue on their judgment, in order that this allotment may be made, but as to this contention, also, we think the plaintiffs must fail.

The judgment in this case was docketed on December 17, 1888, so that more than ten years had elapsed since the docketing of the judgment and before the Act of 1901 was ratified. The plaintiffs, therefore, can take no benefit from that act unless their case falls within the second proviso, to-wit, "that the owners of judgments docketed since March 11, 1885, shall have two years from the ratification of this act within which to assign and set apart the homesteads under such judgments." We think the plain meaning of the Act of 1885, as amended by the Act of 1901, is that the statute of limitations shall not run against any docketed judgment during the existence of an allotted homestead, provided the homestead is, or was, allotted within ten years after the docketing of the judgment, with the further proviso that if the ten years had not expired at the date of the ratification of that act the plaintiff should have two years within which to have the homestead allotted, and if it is allotted within that time the running of the statute should be arrested and the judgment should not be barred by the statute as to the land so set apart, but that at the expiration of the homestead such land might be subjected to the satisfaction of the judgment. If this construction is not placed upon the Act of 1901, full operation and effect cannot be given to both provisos. It is evident from the first proviso that the Legislature intended that the statute should not be suspended unless the homestead has been allotted within ten years after the docketing of the judgment. If the second proviso is allowed to apply to judgments docketed more than ten years before the ratification of the act, it will completely nullify the first proviso, and the rule of interpretation is that effect shall be given to each and every part of the statute, or that one part shall be so construed by another that the whole may (if possible) stand. 1 Blk. Com., 89. "It is not permissible, if it can be reasonably avoided, to put such a construction upon a law as will raise a conflict between different

parts of it, but effect should be given to each and every clause and provision." Black Interp. of Laws, p. 61.

It follows from what we have said that the Court below erred in holding that the statute of limitations did not bar the plaintiffs' right to have execution. The plaintiffs' motion should have been denied.

Reversed.