E. A. MORGAN v. THE FIRST NATIONAL BANK OF CHARLOTTE.

*National Banks—Jurisdiction—Usury—Waiver—Variance.*

1. Where an act of Congress contains no provision in reference to the exercise of jurisdiction in enforcing a penalty provided by the act, the State courts have jurisdiction of an action to enforce such penalty.

2. Congress has the power to deprive the State Courts of jurisdiction of action brought to enforce a right arising under an act of Congress, and this may be done by implication as well as by express provision.

3. Prior to the Act of Congress of 1882, only the United States Circuit and District Courts, and the State, County or Municipal Courts in the county where a National Bank was located, had jurisdiction of an action to recover the penalty for taking usurious interest imposed by §5198 of the Revised Statutes of the United States. Since the act of 1882, any State Court has jurisdiction to which jurisdiction would have attached, had the action been against a State bank.

4. Where, prior to the Act of 1882, an action was brought against a National Bank for charging usurious interest, in the Superior Court of the county in which the plaintiff resided, instead of in that in which the defendant was located, the objection to the jurisdiction must be taken before pleading to the merits, or the defect is waived.

5. The objection that the averments in the complaint are so vague and uncertain that no judgment can be rendered on it, comes too late after an answer has been filed denying the allegations.

6. Where a complaint in an action for usury specified the principal sum constituting the original debt, and the dates and amounts of the usurious payments of interest, it is sufficiently definite, as it furnishes the defendant with all the information necessary to make his defence.

7. Where on the trial below, the defendant's counsel alleged that there was a variance, but made no answer when asked by the Court if he had been misled thereby; *Held,* such variance, if any, is thereby rendered immaterial.

8. In an action against a National Bank for usury the complaint need not negative that there are no State banks of issue which by law are allowed to charge more than eight per cent.

(*Lafoon* v. *Shearin*, 90 N. C., 370; *Halstead* v. *Mullen, ante,* 252, cited and approved).

CIVIL ACTION tried before *Philips, Judge,* and a jury, at Spring Term, 1885, of CLEVELAND Superior Court.

The facts appear in the opinion.

There was a verdict and judgment for the plaintiff, and the defendant appealed.

*Messrs. R. McBrayer* and *Batchelor & Devereux*, for the plaintiff.

*Mr. W. P. Bynum*, for the defendant.

SMITH, C. J.   The plaintiff's action, commenced on June 19th, 1882, in the Superior Court of CLEVELAND County, against the defendant, a corporation formed and doing business as a banking association under the Act of Congress, at Charlotte, in Mecklenburg County, is to recover double the amount of usurious interest exacted and paid for several years upon loans of money, as set out in the complaint.   To these allegations the defendant opposes a direct denial, and also relies upon the defence of the statute of limitations prescribed in the act, which requires the suit to be begun within two years.   Banks organized under this law are allowed to take such interest on the loan of money as is authorized by the law of the State wherein such bank is located, and no more, except that a if greater rate is permitted to banks of issue organized under the laws of the State, the national associations may charge the same.   Rev. Stat. U. S., §5197.   The plaintiff's claim is based upon the concluding clause of the next section, 5198, which is in these words : "In case the greater rate of interest has been paid, the person by whom it has been paid, or his legal representatives, may recover back, in an action in the nature of an action of debt, twice the amount of the interest thus paid, from the association taking or receiving the same : *Provided,* such action is commenced within two years from the time the usurious transaction occurred."

This section, by the subsequent act of February 18th, 1875, was amended by adding thereto the following: "That suits, actions and proceedings against any association under this title, may be had in any Circuit, District or Territorial Court of the United States, held within the district in which such association may be

established, or in any State, County or Municipal Court, in the county or city in which said association is located, having jurisdiction in similar cases." As the National Banking Act, in its original form, contained no provision in reference to the exercise of jurisdiction in enforcing the penalty incurred by the exaction of usurious and unlawful interest on loans, and the law was general and operative, as such, upon all judicial tribunals, State as well as Federal, the Courts of the State could take cognizance of violations of the enactment and afford redress to suitors who sought their aid. This concurrent power when not committed, under the Constitution and laws of the United States, to the exclusive jurisdiction of their own Courts, would be shared by the Courts of the State, according to the measure of jurisdiction conferred upon them by the laws of the State, as decided in many cases, and upon an elaborate argument delivered by Mr. Justice BRADLEY in the opinion in *Clafton* v. *Houseman*, 93 U. S., 130, in support of the right of an assignee in bankruptcy to sue in a State Court for the recovery of part of the trust estate. The cases therein cited are demonstrative of the conclusion reached by the Court.

But the exclusion of the State Courts from participating in the administration of a law of the United States, and enforcing its commands and penalties, need not be in 'express and positive terms, but may be by clear and manifest implication; and when certain local State Courts are designated as the depositories of the power, the inference must be drawn of an intentional withholding of it from others not of that class. This implication of a purpose to confine the exercise of a general jurisdiction possessed by the Courts of the State over suits prosecuted for the imposed penalty of taking unlawful interest, is manifestly found in the amendment of 1875, which specifies the local Courts to whom the jurisdiction is confided, and none others therefore may rightfully exercise it. This conclusion unavoidably follows from the terms of the amendment. But the section was again modified by the "act to enable banking associations to extend their

corporate existence and for other purposes," approved July 12th, 1882, which enlarges the sphere of jurisdiction of the State Courts by substituting for the former the following amendment:

"That the jurisdiction of suits hereafter brought by or against any association established under any law providing for national banking associations, except suits, &c., (not embraced in the present inquiry) shall be the same as, and not other than, the jurisdiction for suits by or against banks, not organized under any law of the United States, which do, or might do, banking business, where such national banking associations may be doing business when such suits may be begun. And all laws and parts of laws of the United States inconsistent with this proviso, be and the same are hereby repealed." Acts 47th Congress, 1st Session, chap. 290, §4.

This enactment opens the doors for the entry of suitors, aggrieved by oppressive usurious charges exacted, into the Courts of the State, competent to furnish redress, had the cause of action originated in the like lawless conduct of a bank chartered by the State. But the plaintiff's case takes no benefit under the change in the law, inasmuch as he begun his suit in the month of June, previous to the approval of the act, and its operation is restricted to such suits as may be, using its own words, "*hereafter brought,*" and does not apply to such as were then depending.

In committing jurisdiction to the special courts mentioned in the amendment of 1875, it left that jurisdiction to be exercised under the State laws, which direct and govern their practice and mode of procedure. The assumption of cognizance of the cause by the Superior Court of Cleveland, instead of the same Court of Mecklenburg, stands upon the same footing as the assumption by the Court of a county, of jurisdiction of a matter of State law which it does not possess, and which is confided to the Court of a different county. The objection to the jurisdiction in such case must be made *in limine,* before putting in an answer, and, if well taken, the result is a transfer to the Court of a county which has jurisdiction. The Code, §195. *Lafoon* v.

*Shearin,* 90 N. C., 370.   It is not a defect in the jurisdiction of a State Court over the subject matter in dispute, but the selection of the wrong local Court wherein it is to be exercised, the remedy for which is the transfer of the cause to the rightful Court, at the election of the defendant; and when, no such election being made, the Court proceeds to trial, it is a waiver, too late to recall, and it must abide the result.   There is no analogy to be found in the rule applicable to Courts of limited and special jurisdiction, such as those of the United States possess, and which is delegated in its full extent by positive law.

In these, whenever upon the face of the proceeding a want of jurisdiction appears, the Court of its own motion and without a formal exception taken, will refuse to proceed further.   But the State Superior Courts possess general jurisdiction, and will be interrupted in a particular case, only when in apt time the objection is brought forward and passed on.

The appellant insists that the averments in the complaint are so vague and uncertain, that no judgment can be rendered upon them, and it should therefore be arrested.

The defendant, without making this exception, which, if maintainable, might have been removed by amendment making the allegations more specific, proceeded to answer and controvert the allegations of fact, as fully understood by it.

Testimony was not allowed to sustain any but the second and fourth counts or separate causes of action set out in the complaint; and the others were practically eliminated from it.   In examining those which evidence was introduced to support, we think they do sufficiently describe the wrongful acts and exactions out of which the cause of action arises.

They specify the two separate principal sums constituting the indebtedness and the moneys exacted as usurious, at intervals of sixty days thereafter, the dates of each being given up to the institution of the suit on June 13th, 1882.   All such as were received anterior to the two years immediately preceding, were rejected, and the jury allowed to render a verdict for double the

sums thus taken during that period. The debt and usury are in each specified; the one in the second, the other in the fourth cause of action assigned; and the defendant is furnished in these allegations with all the information necessary to make his defence, and this is the office of the complaint, as it was of the old declaration in pleading.

The appellant again, upon the trial, alleged that there was a variance between the allegations in the complaint and the proofs offered, in reference to which the Court inquired of the defendant's counsel, if he had been misled thereby, without receiving any response, with a view to the correction, if necessary, under §269 of The Code. We have had occasion to comment on this position in *Halstead* v. *Mullen, ante,* 252.

The appellant's counsel further, in support of his motion in arrest of judgment, urges that the complaint is fatally defective in failing to negative that there are State banks of issue, which, by the law, are allowed a greater rate of interest than is allowed by the general law of the State. It is to be observed that the complaint avers a taking of interest for a forbearance of a loan of money, greater than at the rate of eight *per centum* per annum, and the Court judicially takes notice of the fact that this is the maximum allowed by contract under the general law of the State, and that no banking institution incorporated by the State, can legally take more. Why was it necessary to make the averment that the highest legal rate allowed by law, was that mentioned, or that no more could be demanded and taken by a State bank? Each would have been a public law, and when the facts are stated which show its violation, and the incurring the penal liability therefor, this must be sufficient as a statement of a cause of action against the wrong doer. It is not necessary, certainly, to say there is no law under which, if there was, the defendant can find shelter for its acts, when the Court knows there is none. It is not like the case of a statute which is itself qualified by an exception, resting upon facts, which facts must be negatived to bring the case under the operation of the law,

as the Court has had several times occasion to remark, in considering public criminal accusations, in arriving at its meaning. Here the facts are set out which show the law has been violated, and this being known to the Court, relief will be granted and the wrong redressed.

Upon full examination of the exceptions in the light of the able argument of counsel in support, we find, and so declare, that there is no error of which the appellant can complain, and the judgment must be affirmed. It is so ordered.

No error.                                                    Affirmed.