## CLARK v. WRIGHT.

1. Where a vendee receives a title deed to land, and undertakes, in part payment, to discharge a judgment against his vendor, then constituting a lien upon this land, the administrator of such vendor cannot afterwards require the judgment creditor to proceed against the land itself by levy and sale, to the relief of the vendor's estate, where such a proceeding would be beset with difficulties and would involve litigation.
2. Nor did this agreement between vendor and vendee create a trust enforcible by the vendor against the land itself, but only a simple contract debt in vendor's favor.
3. And this vendee having made a voluntary conveyance of this land to trustees for the benefit of his wife and children, and the trustees having sold the land and received the purchase money, the court declined to order them to apply it to the judgment debt.
4. This court cannot decide by anticipation questions that may hereafter arise.
5. Petition for rehearing refused.

Before WALLACE, J., Chester, March, 1885.

This was an action by W. A. Clark, as administrator of the estate of C. D. Melton, deceased, against Ann E. Wright, executrix, J. J. McLure and C. H. Alexander, trustees for the widow and children of G. W. Melton, deceased, the said widow and children, and W. H. Hardin and J. C. Hardin. The complaint prayed the following relief:

1. That the money realized by the said trustees, and now in the hands of the said John J. McLure and Charles H. Alexander, from the sale of the said Chester property, be ordered to be brought into this court and held subject to the decree herein.

2. That the said defendant, Ann E. Wright, should be required by the use of her judgment to assist plaintiff in subjecting the Chester property to her claim, before demanding payment from plaintiff out of the estate of the said Cyrus D. Melton, she hav-

ing two funds from which she may be paid in full, while the other creditors can at best only have a *pro rata* share of an insolvent estate.

3. That to this end the said Ann E. Wright may be restrained from enforcing payment from this plaintiff, except under the direction and decree of this court.

To the statement of facts made in the opinion it will be necessary to add only this, that the funds realized from the sale of the Melton house and land to W. H. Hardin were in the hands of the trustees, J. J. McLure and C. H. Alexander.

The Circuit decree, omitting its statement, was as follows:

This demand of the complaint is rested upon two grounds: *First.* That Mrs. Wright has two sources to which she can resort for payment—one the Chester property and the other the general assets—her judgment being a lien upon both, while the other unsatisfied judgment creditors have a lien only upon the general assets, their judgments being junior to the conveyance to George W. Melton. *Second.* That all the transactions in reference to this Chester property between C. D. and G. W. Melton resulted in imposing an express trust upon G. W. Melton to pay the Wright judgment, and that that trust binds the land to that end and to that extent.

It is a well settled doctrine in this State that when a judgment debtor sells a part of his property upon which there is an existing general lien, the judgment creditor is remitted in the collection of his debt by process to the available property remaining unsold in the hands of his debtor, and only when that is exhausted and his execution unsatisfied can he resort to the property previously conveyed by his debtor, and then only in the inverse order of the sales. *Bank of Hamburg* v. *Howard and Garmany*, 1 *Strob. Eq.*, 173. As this principle was not controverted at the hearing, it is supposed to be conceded.

Then, as to the first ground of the demand of the complaint, that the Wright judgment must first be levied upon the Chester property, because a lien on that as well as the general assets, and the other judgment creditors hold liens only upon the general assets in the hands of the administrator. The rule here invoked is a familiar doctrine of equity, and founded upon fairness and

justice. When, however, its application would defeat a subsisting and otherwise valid right of third parties, then equities come into play and prevent the application of the rule, because fairness and justice forbids the destruction of one rightful equity to promote another. If here Mrs. Wright be required to go upon the Chester property for the satisfaction of her demand, the rights of the beneficiaries under the trust deed are destroyed. 3 *Pom. Eq. Jur.*, § 1414.

Second. Did the transactions between C. D. Melton and Geo. W. Melton create and impose upon G. W. Melton an express trust which bound this property and which this court will enforce, and hold the property bound to respond? There can be no question that the rights of the holders of the Wright judgment, as against C. Davis Melton, were unaffected by these transactions. C. D. Melton surrendered his security for the purchase money of the property upon the promise of Geo. W. Melton to him to pay the judgment set out in the statement *supra*. It was a contract upon valuable consideration. Geo. W. Melton did not perform, and unquestionably a right of action at law accrued to C. D. Melton to recover damages for his failure to perform his contract. *Estes* v. *Stokes*, 2 *Rich.*, 133. And if an action at law will lie for breach of the agreement, that is a conclusive reason that an express trust was not created. *Lever* v. *Lever*, 2 *Hill Ch.*, 162; *Stroman* v. *O'Cain*, 13 *S. C.*, 103.

Other defences are set out in the answers which need not be considered here, as the foregoing principles are fatal to the complaint.

It is adjudged and ordered, that the complaint be dismissed.

From this decree the plaintiff appealed upon the following grounds:

1. Because the case shows certain transactions touching the transfer of the Chester property, between C. D. Melton and G. W. Melton in their life-time, which, as between them, gave rise to certain well established equities which his honor in his decree has overlooked and entirely disregarded.

2. Because the transactions, all in writing, evince such a state of facts that a court must hold that G. W. Melton became, not a mere debtor, but a trustee of an express trust, which relation

created rights and obligations enforcible in a court of equity; and to hold otherwise, as his honor has done in his decree, is error.

3. Because, when G. W. Melton assumed to lift certain debts in judgment and otherwise (among these the Wright judgment) then pressing upon the shoulders of C. D. Melton, and when in consideration thereof C. D. Melton on his part released the legal lien (the mortgage) that was good against G. W. Melton for twenty years, and when G. W. Melton on his part assumed the legal lien (the Wright judgment) which was good against C. D. Melton for twenty years, the equity of the latter party and the obligation of the former party were concomitant, and until the obligation assumed was discharged, the attending equity continued to exist, and a court of equity will compel the observance of good faith in the whole transaction.

4. Because, to permit G. W. Melton to keep the Chester property discharged from all liability in his hands, and at the same time to permit G. W. Melton to disregard what he assumed as a concomitant binding obligation, would be to permit G. W. Melton to take advantage of his own wrong, and aid him in perpetrating a fraud, which a court will never for a moment sanction; on the contrary, were it necessary to the justice of the cause, a court would wipe out the "satisfaction" of the mortgage and remit C. D. Melton or his representatives to his original rights under it.

5. Because, whether the Wright judgment were a valid judgment or not, it was not in G. W. Melton's mouth to dispute its validity, and as to him and all volunteers, or purchasers, with notice under him, equity will deal with it as a judgment which he and they will not be permitted to dispute.

6. Because the Wright judgment is and was a valid judgment, binding upon the said C. D. Melton at the time of the transaction between him and the said G. W. Melton, and ever has been and now is a valid lien upon the Chester property in the hands of the said G. W. Melton and those holding under him; and while the owners of the Wright judgment cannot be prevented from claiming payment from the estate of C. D. Melton, still in equity the estate of C. D. Melton should be allowed the benefit of that payment out of the fund from the sale of the Chester property, which fund

34

is now in the hands of those who paid nothing for the property, can lose nothing, and are in fact mere volunteers.

7. Because, while it is admitted that the Wright judgment was a legal claim against C. D. Melton in his life-time, and as a legal claim has been enforced against his estate, his honor has entirely overlooked the equity of C. D. Melton not to have that judgment "satisfied," but to be permitted in equity to have it enforced in the name of Ann E. Wright against the Chester property for his benefit, or the benefit of his estate.

8. Because the trustees, McLure and Alexander, under the trust deed to them and the beneficiaries under that trust deed, are volunteers merely, and as such are affected with all the equities that affected their grantor, G. W. Melton.

9. Because W. Holmes Hardin and J. C. Hardin, who became purchasers of the Chester property (the latter of whom is now in possession), purchased the same with full knowledge of the Wright judgment, and in no sense are purchasers for value without notice; and after their purchase, when notified by the plaintiff not to pay the purchase money over to the trustees, McLure and Alexander, and when in the face of this notice they did so pay the purchase money, they must take the consequences of their own voluntary act.

10. Because the plaintiff, Clark, standing in the shoes of C. D. Melton as his personal representative, is clothed with all the rights and equities of the said intestate, and is entitled to enforce them as they are now set forth in this cause, sustained as they are by the evidence therein.

*Mr. J. D. Pope*, for appellant.

*Mr. J. H. Rion* for McLure, trustee.

*Mr. S. P. Hamilton*, for Alexander, trustee, and Mrs. Melton and children.

*Mr. J. L. Glenn*, for W. H. Hardin and J. C. Hardin.

April 20, 1886.   The opinion of the court was delivered by

MR. JUSTICE McGOWAN.   On November 15, 1867, Samuel

Wright obtained a judgment against the late C. D. Melton for a considerable sum. Ten days afterwards (November 25), C. D. Melton sold and conveyed to his brother, George W. Melton, a tract of land and lot in the town of Chester for $8,000, and took for the purchase money four notes and a mortgage of the premises sold to secure them. On November 25, 1871, the brothers, C. D. and George W. Melton, had a settlement, in which the purchase money aforesaid was ascertained to amount to $10,240, upon which was credited certain obligations of C. D. Melton to the amount of $4,286.29, leaving $5,953.71 still due; and in order to discharge this, George W. Melton assumed the payment of certain judgments against C. D. Melton, which had "liens upon the premises," and among them the judgment of Wright above referred to, then amounting to $1,979.30. The aggregate of these judgments amounted to $6,587.97, which overpaid the purchase money by $634.26, and for this C. D. Melton gave his note, and marked the old notes and mortgage for the land "satisfied."

On August 28, 1875, George W. Melton conveyed the land to J. J. McLure, C. H. Alexander, and W. A. Clark, in trust for the use of his wife and children, with certain limitations over. This deed was regular, but voluntary. C. D. Melton died December 4, 1875, and the plaintiff, W. A. Clark, became his administrator. George W. Melton died July 6, 1876, leaving the aforesaid Wright judgment unpaid. In the meantime, the judgment creditor, Samuel Wright, had also died, and his executrix, Ann E. Wright, on October 13, 1877, caused the judgment to be renewed against the plaintiff as administrator of C. D. Melton. Execution was issued on the renewed judgment and levied upon the aforesaid Chester property. Thereupon the trustees instituted proceedings to enjoin the sale, and upon the discovery of some supposed irregularities and defects in the record of the judgment, the levy and sale were not pressed. In 1879, the trustees obtained an order to sell the Chester property for reinvestment, and at that sale Holmes Hardin purchased the property, and subsequently sold it to J. C. Hardin, one of the defendants, who is in possession of the same.

The plaintiff, Clark, as administrator of the estate of C. D.

Melton, finding that the estate was insolvent, instituted proceedings to call in the creditors and marshal the assets. Under this call Mrs. Wright presented her judgment, to which, as stated, objection had been made for want of formalities when it was levied, and undertook to establish it. After contest, it was determined that the judgment was "valid and had a lien from its entry in the abstract of judgments." See *Clark* v. *Melton*, 19 *S. C.*, 498.

Thereupon the plaintiff, administrator of C. D. Melton, commenced this action, for the purpose of requiring Mrs. Wright to seek payment out of the Chester property or its proceeds upon two grounds: *First*. That having a lien upon the Chester property, she has two sources from which she may be paid, viz., that property and the general assets, and she must exhaust the former, to the relief of the other creditors, who, having no lien upon the Chester property, can go only against the general assets; and *second*. That all the transactions in reference to the Chester property between C. D. and G. W. Melton, considered together, amounted to "an express trust on the part of George W. Melton to pay the Wright judgment, and to that end and to that extent the trust binds the land."

All the parties resisted the claim; the trustees and *cestuis que trust* insisting upon the statute of limitations; that G. W. Melton and his heirs had adverse possession of the premises for more than ten years; the purchasers, that they bought at a judicial sale for full value and without notice; and Mrs. Wright insisting that "while indifferent as to the source from whence payment of her judgment may be had, and while asserting her right to be paid from the sale of the premises in question, upon which her said judgment is a lien, she denies that any equity exists to restrain her by injunction from pursuing her remedy against the assets in plaintiff's hands, and to require her to embark in expensive litigation to seek payment elsewhere."

The cause was heard by Judge Wallace, who dismissed the complaint, and from his decree the plaintiffs appeal upon the several grounds stated in the brief.

We do not understand that this is a proceeding to enforce the judgment of Mrs. Wright by a levy and sale of the Chester property. That could only be done by Mrs. Wright herself, the

owner of the judgment, but, having once made an unsuccessful effort in that direction, she declines to do so again. But, in the first view of the plaintiff, it is a proceeding to marshal the securities and to secure for the estate of C. D. Melton, or rather the other creditors of it, the application of the equitable principle, that a person, having two funds to satisfy his demand, shall not, by his election, disappoint other parties, having but one fund. This is an undoubted principle of equity, and has been well stated thus: "The general rule is, therefore, that if one creditor, by virtue of a lien or interest, can resort to two funds, and another to one of them only, as, for example, where a mortgagee holds a prior mortgage on two parcels of land, and a subsequent mortgage on but one of the parcels is given to another, the former must seek satisfaction out of that fund which the latter cannot touch," 3 *Pom. Eq. Jur.*, § 1415. If there was no difficulty about the right of Mrs. Wright to receive payment out of the Chester property, then the plaintiff, Clark, acting for the other creditors, would undoubtedly have a right to enjoin her and to require her, in their relief, to receive payment of her judgment from that source. But the same author, on the same page, says: "These rules must be taken with the modifications and exceptions that in their application the paramount incumbrancer shall not be delayed or inconvenienced in the collection of his debt, for it would be unreasonable that he should suffer because some one else has taken imperfect security; that the rights of third parties shall not be prejudiced, and that the parties themselves are creditors of the same debtor."

In this case we do not lay much stress upon the rights of the widow and children of George W. Melton as standing in the way of the enforcement of this equity, for they are mere volunteers, and their rights, whatever they may be, are no greater than those of their ancestor, under whom they entered and held. But we think there is great force in the objection that the right of Mrs. Wright to receive payment from the Chester property is stoutly contested. It is, indeed, beset with difficulties, and we agree with the Circuit Judge, that it would not be just to Mrs. Wright, in enforcing a mere equity of others, to require her, against her protest, to embark in an expensive litigation, and to be "delayed and

inconvenienced in the collection of her debt." In this respect, the case is somewhat like that of *Walker* v. *Covar* (2 *S. C.*, 20), in which the court say: "Such relief as is here asked is never granted, if the prior creditor is thereby endangered or his right to raise the money out of both funds the least impaired. *Everton* v. *Booth*, 19 *Johnson*, 493; *Evans* v. *Duncan*, 6 *Watts*, 24; *Ramsay's Appeal*, 2 *Id.*, 220. Or where the fund to be resorted to is dubious, or one which may involve him in litigation, notwithstanding the claims of a junior creditor may be defeated thereby. *Fowler* v. *Barksdale*, *Harp. Eq.*, 165; *Goodwin* v. *The State Bank*, 4 *DeSaus.*, 393; *Moore* v. *Wright*, 14 *Rich. Eq.*, 134." In the case last cited it was said: "In adjusting priorities and marshalling securities, the usual course is not to restrain the preferred creditor in the first instance, but to compel him to place his remedies at the disposition of the other claimant, after they have served the purpose of satisfying his own debt. It seems only just to require that those who insist on the sufficiency of remedy as a means of payment should be obliged to take the risk and delay of enforcing on themselves. *Aldrich* v. *Cooper* (Am. notes), 2 *Lead. Cas. Eq.*, 276." The injunction is dissolved in this case without prejudice to any right which W. A. Clark as administrator may have to be subrogated to the rights which Mrs. Ann E. Wright may have had to enforce her judgment against the Chester property.

But, apart from the question as to the equity doctrine just considered, the plaintiff's second view is, that all the transactions between C. D. and G. W. Melton in reference to the Chester property created an express trust on the part of George W. Melton to pay the Wright judgment, and to that end and to that extent the trust binds the land; and the plaintiff, as administrator of C. D. Melton, may have it enforced in equity like a mortgage. We may venture to say, that it would not be matter of regret if such a binding trust could be established; for it does not seem to be in accordance with the principles of justice and equity that the widow and children of George W. Melton should be protected in the possession of property which he gave them, but had never paid for, certainly to the extent of the Wright judgment.

The matter, however, is not at all free from difficulty. If C. D. Melton had not conveyed the title to George W., or, having executed title and taken back a purchase money mortgage, he had left uncancelled so much of the mortgage as would cover the Wright judgment, there could have been no difficulty about it; for in the latter case it would have been easy to foreclose the mortgage, and in the former, if he had retained the title (the promise to pay the Wright judgment having been substituted *pro tanto* for the purchase money notes, which were cancelled), we suppose that C. D. Melton or his administrator might have gone into the court of equity for specific performance of the contract, as an executory agreement as to land, and, if the Wright judgment were not paid, obtain an order to sell it to produce payment. See *Walker & Trenholm* v. *Kee,* 16 *S. C.,* 78, and *Kerngood* v. *Davis,* 21 *Id.,* 206. But C. D. Melton did not retain the title, but, on the contrary, made an absolute deed, and cancelled his notes and mortgage. The contract for the sale of the land was then executed; and it looks as if C. D. Melton, in doing so, committed a mistake which is irreparable. He had an express lien on the land to secure the consideration, and we suppose (after the cancellation of the notes) it would have covered and secured the promise to pay the judgment as a substituted part of the consideration, and yet he voluntarily renounced it. After that, it is difficult to suppose that, in lieu thereof, he relied upon an obscure and doubtful trust, only inferrible from a number of facts, and difficult, if not impossible, to establish.

George W. Melton did promise to pay the Wright judgment. Upon that promise, and possibly the inherent lien of the judgment to enforce itself, C. D. Melton must have relied, but the very point of the difficulty is that the promise did not touch the land specifically. The only conceivable connection between the promise and the land was the fact that the promise to pay the judgment was part of the consideration for the conveyance of the land. That is substantially true and is conceded, but that does not authorize the inference that the promise attached to the land, which had been previously and absolutely conveyed. There is in this State, in regard to executed contracts as to land, no such thing as the equity of the vendor. If one sells and conveys

land, taking in payment a note, the grantee may transfer the land the next day, and the purchase money note, as it cannot follow the land, may never be paid. Whether the promise of George W. Melton to pay the Wright judgment is called a contract, obligation, agreement, or trust, it seems to us the insuperable difficulty still remains, that the undertaking was not specific, but general, like any other promise, for the performance of which reliance is placed only on the honesty and ability to pay of the party making it.

The judgment of this court is that the judgment of the Circuit Court, with the reservation herein stated, be affirmed.

A petition for rehearing was filed by plaintiff, upon which May 24, 1886. The following order was passed:

PER CURIAM. We have carefully considered this petition for a rehearing. All the issues made by the pleadings were considered and decided, and the court cannot undertake, by administrative orders or otherwise, to decide by anticipation any questions which may hereafter arise.

As it does not appear that any material fact or principle involved was overlooked in the decision, there is no ground for a reargument. Petition refused.

At the same time the court refused to grant the petition of W. Holmes Hardin and J. C. Hardin for a rehearing.