BROWN, J., did not sit on the hearing of this case.
Civil action, brought by George H. Brown, administrator of F. B. Satterthwaite, to enforce two certain judgment liens against the land set apart to J. J. Perkins as a homestead; one part of which was sold by J. J. Perkins to Lucy G. Bernard, from whom it descended, to the defendants Bernards, and the remaining part was afterwards sold by the homesteader to his son, W. W. Perkins.
At the November Term, 1870 (Nov. 11), of Beaufort Superior Court, judgment was rendered in the name of F. B. Satterthwaite, endorsee, against J. J. Perkins, on a note for $527.94, bearing date 2 November, 1869, which judgment was transcripted and duly docketed in the Superior Court of Pitt County, where the land is situated, on 17 February, 1871, and was properly cross-indexed. That at the same term of the Superior Court another judgment was recovered in the case of (256) C. S. Parsons Sons, to the use of F. B. Satterthwaite v. J. J. Perkins, on a note for $527.95, dated 2 November, 1869, with interest from 5 March, 1870; said judgment, on 16 February, 1870, was transcripted from Beaufort Superior Court to Pitt Superior Court and regularly docketed on the judgment docket of Pitt Superior Court, and properly cross-indexed.
At the August Term, 1913, of Pitt Superior Court, Edward Parsons and Henry C. Parsons filed in this cause an affidavit, setting forth that they were the survivors of the late firm of C. S. Parsons Sons, and as such the equitable owners of the two judgments declared on in this action, and entitled to the proceeds collected, and that the said judgments were not the property of F. B. Satterthwaite, who, at the time of taking these judgments, was in possession of the two notes upon which they were rendered, as attorney for the collection thereof; and that nothing has been paid on said notes or judgments, but that the same are still due and owing to the late firm of C. S. Parsons Sons, the equitable owners thereof, upon which they were permitted to intervene and be made parties plaintiff to set up the rights of the said C. S. Parsons Sons to the proceeds realized from the collection of said judgments.
Upon the two judgments referred to, which were taken and docketed in Beaufort Superior Court, transcripted, docketed and cross-indexed *Page 313 
on the judgment docket of Pitt Superior Court, executions were regularly issued, and the homestead of the judgment debtor, J. J. Perkins, was duly allotted to him, which included Lot No. 33, in the town of Greenville. The homestead returns were regularly recorded in the office of the register of deeds, 15 March, 1871.
At the Spring Term, 1870, of Pitt Superior Court, a judgment was rendered in favor of W. M. B. Brown as administrator of Richard Short v. J. J. Perkins, for the sum of $1,788.90, with interest on $1,650.90 from 1 April, 1870, and docketed in said month in Pitt Superior Court. A homestead was duly alloted [allotted] under an execution issued upon this judgment, to the defendant, which embraced said Lot No. 33.
On 24 July, 1893, J. J. Perkins, for the consideration of $1,000, conveyed the land described in the complaint, it being a part of his homestead and of Lot No. 33, to Lucy G. Bernard, wife of C. M. Bernard, and mother of the other Bernards, who are defendants in this action. She died before the bringing of this suit. Afterwards, on 12 November, 1903, J. J. Perkins, the judgment debtor and homesteader, conveyed the remainder of Lot No. 33 to his son, W. W. Perkins. The deeds were all duly registered. J. J. Perkins died in May, 1911. F. B. Satterthwaite died in 1875, and plaintiff, George H. Brown, qualified as his administrator in 1875, and filed his final account in 1876. It is alleged, and there is proof to show it, that the judgment of W. M. B. Brown, (257) admr., v. J. J. Perkins, was assigned by L. V. Morrill, administrator, to R. A. Tyson, and by the latter to Mrs. A. C. Perkins, wife of the judgment debtor, J. J. Perkins. She died, leaving a will in which she devised and bequeathed all of her estate to her husband, J. J. Perkins. After her death R. A. Tyson assigned the judgment, at the request of the judgment debtor, J. J. Perkins, to the latter's son, W. W. Perkins, who is dead, his administrator, heirs at law and distributees being parties to this suit, as defendants.
Before the judgment in favor of W. M. B. Brown, administrator, was assigned by R. A. Tyson to Mrs. J. J. Perkins he executed to Mrs. Lucy G. Bernard the following instrument:
For and in consideration of the sum of $600 I do hereby grant, bargain, sell and release and remise and forever quitclaim unto Lucy G. Bernard, her heirs and assigns forever, a certain piece or lot of land situate in the town of Greenville, known as a part of Lot No. 33 in said town, which has this day been conveyed by J. J. Perkins to the said Lucy G. Bernard, and the same is relieved and discharged from any lien on account of a certain judgment recorded in Pitt Superior Court of W. M. B. Brown, administrator of Richard Short, transferred to L. V. Morrill, and by said Morrill assigned to me, and on record in Judgment Docket No. 1, page 193. *Page 314 
In witness whereof I hereby set my hand and seal, this 24 July, 1893.
R. A. Tyson.
R. A. Tyson testified as follows: "The judgment of W. M. B. Brown, administrator of Richard Short, v. J. J. Perkins, was assigned to me by L. V. Morrill. I transferred it to Mrs. A. C. Perkins, wife of J. J. Perkins. I made a transfer of the judgment on a little strip of paper. Mr. E. A. Moye was clerk; I think he pasted it on there. Mr. Moye wrote it out; I signed it and left it with Mr. Moye; saw him stick it on the book and never saw it any more until Mr. J. J. Perkins came to me and said he wanted the transfer made again, as it had gotten off of that book; that he wanted the transfer again; that he had paid me for the judgment and there was nothing against it, and he wanted it transferred to his son. Mrs. Perkins was dead when I transferred to his son, that is, when I transferred it the last time. It was all paid when I transferred it to Mrs. Perkins. Mr. Bernard paid me, I think, $600; I do not remember exactly. I think that was transferred the same way, and I was to give him $600 interest in the judgment. I think that was transferred the same way. It was written on a little piece of paper and stuck on the book. I do not know what became of that piece of paper; it was never brought back to me. Mr. Perkins said it was lost and gone (258) and he wanted me to retransfer. I don't know whether the paper with that I transferred to Mrs. Perkins was on the record when I made the transfer to W. W. Perkins. It was like it is now. I signed the transfer on a little piece of white paper. Mr. E. A. Moye, clerk of the Superior Court, was present. He is dead. Mr. J. J. Perkins was also present; he is also dead. Two or three years after that J. J. Perkins came to me and asked me about it. I have not told that I wrote it on a piece of paper and handed it to Mrs. Perkins. I was friendly with W. W. Perkins. Mr. J. W. Perkins married W. W. Perkins's widow. I am not friendly with him. I married J. J. Perkins's oldest daughter. J. W. Perkins and myself were on friendly terms at the time of this transaction; disagreement has happened recently."
This action was commenced 8 May, 1913.
Defendant tendered these additional issues:
7. Did Lucy G. Bernard pay to R. A. Tyson, owner, as assignee of the judgment of W. M. B. Brown, administrator of Richard Short, v. J. J. Perkins, six hundred dollars on said judgment; and did said Tyson assign to Lucy G. Bernard an interest in said judgment to the extent of said six hundred dollars at the time of the sale of the land by J. J. Perkins to said Lucy G. Bernard?
8. Did R. A. Tyson assign to Allie C. Perkins, wife of J. J. Perkins, the remaining part of said judgment? *Page 315 
9. Did Allie C. Perkins, wife of J. J. Perkins, bequeath by will her interest in said judgment to J. J. Perkins?
10. Was the assignment, as it appears upon the judgment docket of said judgment of W. M. B. Brown, administrator of Richard Short, v. J. J. Perkins, to W. W. Perkins, made after the death of Allie C. Perkins?
11. After the payment and assignment to Lucy G. Bernard of six hundred dollars in the judgment of Brown, administrator, as aforesaid, v. J. J. Perkins, did said J. J. Perkins pay off the balance of said judgment before the assignment to W. W. Perkins?
The jury returned the following verdict:
1. Did F. B. Satterthwaite, endorsee, obtain a judgment against J. J. Perkins in Beaufort Superior Court for $527.94 and costs, and was said judgment duly docketed in said court 11 November, 1870, and did C. S. Persons to the use of F. B. Satterthwaite obtain one other judgment for $527.95 and costs against J. J. Perkins, and was said judgment duly docketed in said court 22 November, 1870? Answer: Yes.
2. If so, were said judgments duly transcripted and docketed in the Superior Court of Pitt County, as alleged in the complaint, on 18 February, 1871? Answer: Yes.
3. Was the homestead of the said J. J. Perkins duly allotted (259) and assigned to him on 16 March, 1871, as alleged in the complaint and answer, and did said allotment include the lands in controversy in this action as his homestead? Answer: Yes.
4. Is the lien of said judgments still subsisting on the lands set apart to J. J. Perkins as a homestead? Answer: Yes.
5. Is the action of the plaintiff to foreclose said liens barred by the statute of limitations? Answer: No.
6. Are C. S. Parson Sons the equitable owners of the two judgments set out and described in the complaint and declared on in this action, to wit, F. B. Satterthwaite, endorsee, v. J. J. Perkins, and C. S. Parsons Sons to the use of F. B. Satterthwaite against J. J. Perkins? Answer: Yes.
The court adjudged that the land conveyed to Lucy G. Bernard be sold by the commissioner, to pay the judgments held by plaintiffs and amounting to $3,873.16, on the first day of the term, and the costs and also the expenses of sale, and further directed the application of the proceeds of sale and a report by the commissioner to the court. The Bernards excepted, appealed and assigned errors as follows:
1. The appellants moved to set aside the proceedings in Beaufort County in both cases against J. J. Perkins for irregularity, on the ground that Parsons Sons were not residents of this State and J. J. Perkins was a resident of Pitt County, and suit should have been *Page 316 
brought in Pitt County. His Honor denied the motion and appellants excepted.
2. The plaintiffs offered the records of Beaufort County and the transcripts of Pitt County. The appellants objected on the ground that the records were mere fragments and that no judgment had ever been rendered or drawn up and recorded. This same objection was made to each and every one of such records. These objections were all overruled and appellants excepted.
3. At close of plaintiff's evidence the defendants Bernard moved for judgment as of nonsuit on the following grounds: (a) For that the records do not show that there was ever any judgment rendered in either action, and that the docketing of what is on record is not sufficient to constitute a lien on the land in controversy. (b) That there is no evidence to show that the plaintiffs Henry C. Parsons and Edward Parsons are now or ever were in any way connected with the firm of C. S. Parsons Sons. (c) That plaintiffs' claim, if any they ever had, is barred by the statute of limitations.
4. The defendants Bernard allege in the pleadings that if there is any subsisting lien on the lands formerly owned by J. J. Perkins that they are entitled to subrogation as to the six hundred dollars (260) paid on the W. M. B. Brown judgment, which was the first lien on all the land, and also that their ancestor having purchased in 1893, and the lands now in possession of Virginia H., V. E. and Harry W. Perkins having been conveyed in 1903, this land must first be subjected to sale to satisfy plaintiffs' claim. This claim was denied by the court.
5. At the close of all the evidence the defendants Virginia H., V. E. and Harry W. Perkins moved for judgment as of nonsuit. Motion allowed. Appellants excepted.
6. At the close of all the evidence the court refused their motion for nonsuit.
7. The court refused to submit the additional issues tendered by the appellants, as set out in the record, and defendants excepted.
8. Under the charge of the court the jury answered all the issues submitted in favor of the plaintiffs, and the appellants excepted.
9. Appellants moved for a new trial for errors set out in record. Overruled, and the appellants excepted.
10. When the judgment was tendered for the signature of the judge, and before the signing of same, the appellants moved to set aside the verdict and for a new trial, on the ground that there are not sufficient facts found on which to render judgment, the records all showing that George H. Brown, as administrator of Satterthwaite, has no interest, right, or title in and to said judgments, or either of them, and there is *Page 317 
no proof and no finding of fact that the plaintiffs Henry C. Parsons and Edward Parsons are now or ever were members of or in any way connected with the old firm of C. S. Parsons Sons, which they allege was dissolved by the death of some of its members many years ago. The motion was overruled and exception taken. Appeal by defendants.
After stating the case: This action was brought by the plaintiff against the administrator of J. J. Perkins, the judgment debtor, and other parties interested in the controversy, to enforce the lien of the judgments recovered by him in Beaufort Superior Court, and, in furtherance of that purpose, to have a sale of the land which is covered by the homestead, and the proceeds applied to the payment of the said judgments, the homesteader having died, and the right to subject the land to the satisfaction of the debts evidenced by the judgments having accrued to him, the plaintiff.
The first objection to plaintiff's recovery is that the judgments were not duly rendered in Beaufort Superior Court. The record entry contains all the essential elements of a judgment, and it was not (261) necessary to the validity of the judgments that they should have been signed by the judge. It was held in Bond v. Wool, 113 N.C. 20, that while it is more regular, and for many reasons the better course, that a judgment should be signed by the judge, the provision of the statute is not mandatory, and, consequently, an entry "Judgment as per transcript filed," is sufficient to constitute a judgment. It has been repeatedly held that the requirement as to signing a judgment is merely directory. Rollins v. Henry, 78 N.C. 342; Keener v. Goodson,89 N.C. 273; Summer v. Sessoms, 94 N.C. 371; Ferrell v. Hales, 119 N.C. 212.
The motion to set aside the judgments for irregularity came too late, and should have been made in the Superior Court of Beaufort County, where they were originally rendered, but the ground of the motion, that the actions should have been brought in Pitt County instead of Beaufort County, was insufficient, as an objection to the venue should be made before judgment, for it should be taken in apt time, and if the defendant pleads to the merits he will be deemed to have waived it. McMinn v. Hamilton,77 N.C. 300; Lafoon v. Shearin, 91 N.C. 370; Morgan v. Bank, 93 N.C. 352; Clark's Code (3 Ed.), sec. 195, p. 149, and note. *Page 318 
The defendant argued that the entries on the records were mere fragments, and too uncertain to be considered as solemn judgments of the court, but we think otherwise. We have discussed this question somewhat already, but we may add that if Rollins v. Henry, supra. is examined, it will be found that the judgment in that case consisted merely of memoranda and was not as definite and complete as those in question here, and it was held to be valid and sufficient; and in Bond v. Wool, supra, the entry, "Judgment as per transcript filed," was considered as sufficient to show a regular judgment of the court.
We think there was some evidence that Henry C. and Edward Parsons had the beneficial interest in the judgment, but if there was not such evidence it cannot avail the defendants, as the judgments were taken in the name of Mr. Satterthwaite, and, nothing else appearing, he was the legal owner of the one and the beneficial owner of the other, as the record now shows, at the time of his death, and his administrator can have them enforced or collected for the benefit of the true owner. The presumption is that the plaintiff in a judgment is the owner of it, and the burden of proof must be on the one who alleges the contrary. If Mr. Satterthwaite was not the beneficial owner of one of the judgments he was, as nominal plaintiff, at least a trustee, as he recovered the judgment in his own name, and having the legal title, he would hold it for the use and benefit of the real owner. These are matters to be settled between George H. Brown, administrator, and the real owners (262) of the judgment, and do not concern the defendant, as they will be protected by payment to the plaintiff of record. Whether he had a right, in law, to sue on the notes, as he did, cannot be questioned collaterally, at this stage of the proceedings, as an objection for defect of parties must be taken by answer or demurrer or it will be considered as waived. Revisal, secs. 475, 476, 477 and 478; Usry v. Suit, 91 N.C. 406;Kornegay v. Steamboat Co., 107 N.C. 115, and cases cited at p. 117. It is not necessary that the Parsons should be parties, so far as the defendants are concerned, as the latter may safely pay to the plaintiff on the record, as we have shown, and to fortify this further, we now cite Newsom v. Russell, 77 N.C. 277: "It is not the duty of the maker of the note to see to the application of the money, and it is even less his duty to fight the battle of the creditors of the bankrupt. What interest is it to him if he is absolved from further liability by payment of his debt upon a judgment regularly obtained against him?" But it may be expedient to determine the fact as to the beneficial interest of the Parsons, so that the plaintiff may know how to pay out the fund when received by him and to protect him against any mistake in that regard. Plaintiff has filed a petition for a certiorari to correct the record, so as to show that it was admitted at the trial that the Parsons *Page 319 
were the beneficial owners of the judgments, with a letter from the presiding judge to that effect, but we do not deem it necessary to act upon it at all, as we have decided not to disturb the finding on the sixth issue, and it does not concern the defendant if the Parsons are not parties. The court may make other parties as defendants in this action, if the issues to be submitted require it, because of their interest therein. The motion of the appellants for judgment of nonsuit was properly overruled. The question involved in the nonsuit of plaintiff on the motion of Virginia H. and Harry W. Perkins will be hereinafter considered.
This leaves the three principal questions in the case for consideration: First, whether the judgments are barred by the statute of limitations; second, whether the Bernards are entitled to have the Perkins' part of the land (lot No. 33) sold, it being the last part conveyed by J. J. Perkins, before their land is resorted to by the plaintiff; and, third, whether the court should have submitted to the jury the issues tendered by the Bernards.
As to the statute of limitations, we do not think it barred the plaintiff's right to proceed in the collection of the judgments by suit. Mr. Gulley has stated his contention in behalf of the Bernards very frankly and very clearly. We quote from the supplemental brief: "The record shows that the so-called judgments were docketed 11 November, 1870, the homestead was allotted on 18 February, 1871, or 3 months and 7 days afterwards. The statute of limitations was not suspended from 1 November, 1883, to 11 March, 1885, making 1 year 4 months and 10 days to be added. The present statute, Revisal, sec. 686, was passed (263) 6 February, 1905, and this action was begun 15 August, 1913, making 8 years 6 months and 9 days between the two dates. These three periods, when added together, make 10 years 1 month and 26 days, showing that the action is unquestionably barred."
By the Laws of 1869-'70, ch. 121, ratified 25 March, 1870 (Battle's Rev., ch. 55, sec. 26), what is called "the reversionary interest" in a homestead was forbidden to be sold, and it was further provided that the statute of limitations should not run against any debt owing by the owner of the homestead affected by the act during the existence of his interest in the homestead. This act was construed in McDonald v. Dickson,85 N.C. 248. It was not incorporated in the Code of 1883, which became effective on 1 November of that year, and it was held in Cobb v. Halyburton,92 N.C. 652, 654, that it ceased to operate from that day and the statute of limitations again began to run, and it continued to do so until 11 March, 1885 (Laws 1885, ch. 359), when another act was passed with this provision: "The statute of limitations shall not run against any payment owing by the owner of a homestead or homestead interest during the existence of such homestead or homestead *Page 320 
interest, whether the same has been or shall hereafter be allowed, assigned and set apart under execution or otherwise." The word "payment" used in this statute, which from the context it was reasonably inferred meant "judgment," and was by some misprision of the copyist substituted for the latter word, produced some uncertainty in regard to the matter until 24 January, 1887, when the Legislature corrected the phraseology by substituting the words "judgment against" for the other words, "payment owing by," so that it would read generally that the statute of limitations should not during the existence of the homestead affect any judgment against the owner thereof. The acts of 1885 and 1887 now constitute a part of Revisal, sec. 685.
We need not decide whether the Bernards are entitled in the computation of time elapsed, when the statute of limitations was operative, to the first period claimed by them, that is, the 3 months and 7 days between the date of docketing the plaintiffs' two judgments and the date when the action was commenced, nor need we consider the other claim of 1 year 4 months and 10 days from 1 November, 1883, to 11 March, 1885, as we are of the opinion that they are not entitled to count the period last claimed, that is, 8 years 6 months and 9 days, our construction of the act of 6 February, 1905 (Laws of 1905, ch. 111), as brought forward in the Revisal, sec. 686, being quite different from the one relied on by learned counsel. That section provides: "The allotted homestead shall be exempt from levy so long as owned and occupied by the homesteader or by any one for him, but when conveyed by him in the mode authorized by the Constitution, Article X, sec. 8, the (264) exemption thereof ceases as to liens attaching prior to the conveyance. The homestead right being indestructible, the homesteader who has conveyed his allotted homestead can have another allotted, and as often as may be necessary: Provided, this shall not have any retractive effect."
The Bernards insisted that under section 686 of the Revisal, if the owner of the homestead, against whom a judgment has been taken, conveys it, he thereby subjects it to sale under execution issued upon the judgment, and that, as the creditor can thus proceed against him, the effect of the section is to put the statute of limitations in motion again as to homesteads which have been conveyed by their owners. We need not say how this is, or give any precise opinion upon the meaning of that statute, as there is a proviso to it which prevents it from being retroactive in its operation. In our case the judgments were rendered, and the homestead allotted and conveyed by its owner long before the statute (Revisal, sec. 686) was enacted. It would, therefore, be made to operate retroactively if applied to the facts in this record. It was thought just and right that it should not do so, as it might otherwise be *Page 321 
open to very serious objection. At any rate, the Legislature has plainly said it shall have no such effect, but a prospective one alone, and this is a sufficient reason for the law. In Davenport v. Fleming, 154 N.C. 291, the Court considered the act and said, by Justice Hoke, in regard to this feature of it: "A construction of section 686 of the Revisal does not seem to be involved in this appeal, for the section itself contains the provision that the same shall have no retroactive effect, and the determinative facts all transpired before the section was enacted. Chapter 3, sec. 3, Laws 1905." And in Crouch v. Crouch, 160 N.C. 447, the Court, by the Chief Justice, said: "It is true that under the act of 1905 ch. 111, now Rev., 686, the homestead exemption ceased as to this tract of land when the homesteader conveyed it to Abernathy. But the act specifically provides that it shall not have any retroactive effect; therefore the land did not become subject to plaintiff's execution till 1905, and the defendant has neither held the land seven years under color of title nor is the lien of the judgment barred by the ten years statute of limitations." We therefore conclude on this question that the last claim of the Bernards cannot be allowed, and the eight years six months and nine days counted as a part of the time during which the statute of limitations was running, and, this being so, it follows that the judgments are not barred by it. Farrar v. Harper, 133 N.C. 71, does not apply. It decided very different questions: first, as to whether the act of 1885, ch. 359, suspended the running of the statute of limitations until there had been an actual allotment of the homestead; and, second, as to whether the act of 1901, ch. 612, extending the time two years for allotting homesteads, prevented the running of the statute against a judgment which was already more than ten years old. We answered (265) both questions in the negative.
The next inquiry is, whether the Bernards are entitled to have the part of lot No. 33, which was conveyed to W. W. Perkins by J. J. Perkins, sold under the decree of the court to satisfy plaintiff's judgments before their part of the said lot is sold for that purpose, as the same was conveyed to them by the judgment debtor, J. J. Perkins, before he conveyed the remainder thereof to W. W. Perkins.
The doctrine seems to be established that where there is a lien by judgment resting upon land, part of which is sold by the debtor, the remaining portion will be sold before resorting to the land first sold to satisfy the debt, and the rule extends to a purchaser of the remaining land from the judgment debtor as well. The rule, with its exception or qualification, is thus stated in 23 Cyc., 1392 and 1393: "Where part of the land subject to the lien of a judgment has been sold, equity will require the judgment creditor, seeking to enforce his lien, to proceed first against that portion remaining unsold provided this can be done *Page 322 
without injustice to him and without involving him in litigation or danger of loss. So, also, where part of the land has been mortgaged, the judgment creditor must first have recourse to that portion remaining in the hands of the debtors; and where part of the land has been mortgaged and part aliened in fee the judgment creditor must first proceed to sell the debtor's equity of redemption in the mortgaged lands before coming upon the property conveyed in fee. Where lands subject to the lien of a judgment have been sold or encumbered by the owner at different times to different purchasers there is no contribution among the successive purchasers, but the various tracts are liable to the satisfaction of the judgment in the inverse order of their alienation or encumbrance, the land last sold being first chargeable, unless the judgment creditor breaks the order of liability by a voluntary release of one or more of the tracts."
It has been recognized by this Court in Jackson v. Sloan, 76 N.C. 306, where Justice Bynum said: "The rule of equity is, that when one creditor can restort [resort] to two funds for the satisfaction of his debt, and another to one only of the funds, the former shall first resort to the fund upon which the latter has no claim, as that by this means of distribution both may be paid. And it is an analogous principle of equity that where a debtor whose lands are encumbered by a judgment lien sells one portion of it, the creditor who has a lien upon that which is sold and upon that which is unsold shall be compelled to take his satisfaction out of the undisposed of land, so that thus the creditor and the purchaser both may be saved. Rollins v. Thompson, 21 Miss. 521;Russell v. Howard, 2 McL., 489; Alston v. Munford, 1 Brock., 267; Hermon on Ex., 224. But this, however, is never done when it (266) trenches on the rights or operates to the prejudice of the party entitled to go upon both funds. Meech v. Allen, 17 N.Y. 300;United States v. Duncan, 4 McL., 607; McCulloch v. Dashiell, 1 Harris 
Gill, 96." See, also, Francis v. Herren, 101 N.C. 497; 2 Story's Eq. Jur., sec 1233 a; Clark v. Wright, 24 S.C. 526.
This equity bears a close resemblance to the doctrine of marshaling, "which grows out of the principle that a party having two funds to satisfy his demands shall not, by his election, disappoint a party who has only one fund. If A, for example, holds a first mortgage against only one of these parcels, natural justice would seem to require that A should not resort in the first instance to the parcel covered by B's mortgage, but should endeavor to collect his debt from the lot charged with his encumbrance alone, and resort to the portion covered by B's mortgage only for the purpose of making up any deficiency." Bispham's Pr. of Equity, sec. 340. But, as has been observed, this equity is never enforced against the creditor when he will, in any substantial way, be *Page 323 
prejudiced by it, and if it were not for the other questions involved we would hold that the plaintiffs in the Satterthwaite judgment would be delayed or embarrassed in the collection of his debt and put to extra cost and expense, and the doctrine, therefore, would not apply; but there are other matters to be determined in which he has an interest and the other parties a very vital one. It is asserted that the judgment in favor of W. M. B. Brown, administrator of Richard Short, has never been paid, but is still due and owing, and is a charge upon the lands of J. J. Perkins or his assignees, while this is denied on the other hand. There is also controversy as to whether this judgment was assigned to Perkins's wife, and afterwards given to him in her will, thereby being extinguished, and also a contention by W. W. Perkins, administrator, and heirs, that it was assigned to him. C. M. Bernard also claims that six hundred dollars of this judgment was assigned to him. As to this claim of C. M. Bernard, it appears that if there was such an assignment it was made for the purpose of protecting the land conveyed to Bernard's wife by J. J. Perkins from any lien of the judgment of W. M. B. Brown, administrator of Richard Short, and as we hold that the land so conveyed is discharged from any such lien, the question as to this assignment becomes immaterial. The paper-writing, dated 24 July, 1893, and entitled a "release," which was given by R. A. Tyson to Mrs. Bernard, quitclaims to her the parcel of land conveyed to her by J. J. Perkins. But R. A. Tyson had no estate or interest in the land, being merely a judgment creditor, having nothing more than a lien thereon. It has been held in this Court that a judgment does not vest any estate or interest in the land upon which it is a lien, but only gives to the plaintiff in it the right to have it applied to the satisfaction of his debt. Bruce v.Nicholson, 109 N.C. 202; Baruch v. Long, 117 N.C. 509 Bryanv. Dunn, 120 N.C. 36; Dail v. Freeman, 92 N.C. 357; Murchison (267)v. Williams, 71 N.C. 135. It would seem, therefore, necessarily to follow that it was intended, as the legal effect of the instrument, that the land should be released and exonerated from the judgment lien, as this is all that he, R. A. Tyson, could do, and we so hold upon the facts as they now appear.
But the other questions embodied in the issues tendered by the Bernards must be submitted to the jury in order that the facts may be found as to whether the said judgment was paid by J. J. Perkins, and, if not, whether he assigned it to his wife and in her will she gave it to him, which, of course, would extinguish it, as the two antagonistic rights of creditor and debtor had merged in one and the same person. The issues might be a little more clearly drawn, but we leave this with the court below, and will not anticipate what the evidence may be by any attempt to formulate them ourselves. We will suggest, though, that an *Page 324 
issue be submitted as to whether J. J. Perkins paid the judgment out of his own money before the time it is alleged that he assigned it to his wife. As to issue No. 7, tendered by the Bernards, if Mrs. Bernard paid the full consideration of $1,000 for the land conveyed to her by J. J. Perkins, and it is released, as we hold, from the lien of the judgment, we do not see how an assignment of $600 of the judgment to C. M. Bernard can be sustained, other than as confirming the release to his wife, unless it was an independent transaction based upon a different consideration. But it may be necessary to settle this matter by a finding of the jury unless the parties can agree as to the true nature of the transaction.
A court always seeks to secure the best price in the sale of land under its decree, and, therefore, it is necessary to determine the status of the W. M. B. Brown judgment, not only to settle all disputed matters so that the land can be sold to determine how the proceeds of sale shall be distributed, as that judgment is older in date, and, therefore, is prior in lien to the other two, but in order to remove the cloud from the title and get a sound price for the land. As the junior judgment creditor has an interest in the settlement of these matters there will be no additional delay to him if we direct that the Perkins part of the lot be first sold, before there is a sale of the Bernard lot, as these questions must be determined before any sale of the land can be had, and recovery of his debt will not be jeopardized, nor will be in the least embarrassed thereby.
We therefore conclude: First, that the plaintiff holds valid judgments against J. J. Perkins, which are liens upon the lands in question (lot No. 33). Second, that said judgments are not barred by the statute of limitations, and that plaintiff is entitled to have them sold for their satisfaction. Third, that if the judgments are not paid within a time to be fixed by the court, and it therefore becomes necessary to sell (268) the land, that part of it which was conveyed to W. W. Perkins shall be first sold before the part thereof which was conveyed to Mrs. Lucy G. Bernard is sold to pay the indebtedness.
This conclusion is practically the same that would be reached had we affirmed the ruling of the court that the Bernard land alone be sold, for in such an event the Bernards would be entitled to pay the amount of the debt to the plaintiff herein and have the judgment assigned for their use and benefit, in which case they would be subrogated, by virtue of the assignment, to the rights of the plaintiff as against the Perkins interest in the land, or if they had been compelled to pay it by a sale of their land, or by compulsion of legal process or a decree of court, which is substantially the same thing, they would be subrogated in equity to the rights of the plaintiff, as their land occupies, in contemplation of equity, the position of surety to the debt, the Perkins land being the principal, *Page 325 
and the liability of the Bernard land, as between it and the Perkins land, being secondary, and the creditor being satisfied and out of the way, thus giving full play to the enforcement of this plain equity as between the two parcels of land upon which the lien of the judgment rests.
"The equity of subrogation springs naturally out of the two equities just considered, of contribution and exoneration, and is, in fact, one of the means by which those equities are enforced. Subrogation is an equity called into existence for the purpose of enabling a party secondarily liable, but who has paid the debt, to reap the benefit of any securities or remedies which the creditors may hold as against the principal debtor and by the use of which the party paying may thus be made whole. This equity may be used to enforce the equity of exoneration as against the principal debtor, or of contribution as against others who are in the same rank. This equity of subrogation is one eminently calculated to do exact justice between persons who are bound for the performance of the same duty or obligation, and is one, therefore, which is much encouraged and protected." Bispham's Equity (6 Ed.), secs. 335 and 336.
The duty rested upon the principal debtor, J. J. Perkins, before he conveyed to W. W. Perkins, to pay off the debt in exoneration of that part of the land he first sold to Mrs. Bernard, or forfeit the remaining portion of the land to the extent necessary to do so, and when he conveyed that part to W. W. Perkins the latter took it subject to the same equity. Polkv. Gallant, 22 N.C. 395; Winborne v. Gorrell, 38 N.C. 117, Duran v.Crowell, 97 N.C. 373. So it results that, whichever way we view it, the right to have the Perkins land sold first before theirs was subjected to the payment of the debt belonged to the Bernards.
It was erroneous to grant the nonsuit against the plaintiff in favor of the Perkins land. It is true the plaintiff did not except, but the Bernards did, and they are entitled to have it set aside, in order (269) to have their equity fully administered, and this will be done.
The case will proceed further in the Superior Court according to this opinion, and as both the Bernards and Perkinses resisted plaintiff's recovery by denying the validity of the judgments, and as the nonsuit obtained by the Perkinses has been set aside, the costs of this Court will be divided equally between those defendants, the Bernards to pay one-half and the Perkinses the other half.
Error.
JUSTICE BROWN did not sit during the argument of this case and took no part in the decision. *Page 326 
 Cited: Brown v. Harding, 171 N.C. 686, Petition to rehear denied;Marler v. Golden, 172 N.C. 825 (4f); Casket Co. v. Wheeler, 182 N.C. 462
(4f); Clark v. Homes, 189 N.C. 710 (3f); Eaton v. Doub, 190 N.C. 17 (5f);Trust Co. v. Godwin, 190 N.C. 517 (8g); Farrow v. Ins. Co., 192 N.C. 149
(11f); Everett v. Staton, 192 N.C. 224 (15f); Causey v. Morris, 195 N.C. 536
(3g); McLamb v. Adams, 222 N.C. 715 (4f); Beam v. Wright, 224 N.C. 684
(15f); Lee v. Rhodes, 227 N.C. 241 (1l).